## HOWELL v. MILLER.

### Opinion delivered April 11, 1927.

1. COURTS—EFFECT OF RECITAL OF APPEAL.—A judgment of the circuit court, reciting that the judgment of the probate court appealed from is vacated and held for naught, is *prima facie* evidence that the appeal from the probate court was taken in the manner provided by law, and must be taken as true, unless by bill of exceptions or otherwise the record contains evidence to contradict the recital of the judgment.

2. APPEAL AND ERROR—PRESUMPTION IN FAVOR OF COURT'S FINDING.—Every presumption must be indulged in favor of the court's findings, which competent evidence would warrant.

3.  WILLS—COMPETENCY OF TESTATOR.—A testator has sufficient mental capacity to make a will, notwithstanding great bodily weakness from sickness, or extreme distress of mind, if he is capable of understanding the conditions and extent of his property, his relations to the persons who are entitled to be considered as objects of his bounty, and the scope and bearing of the provisions of his will, without prompting.

4.  WILLS—EVIDENCE OF UNNATURAL DISPOSITION.—In a will contest evidence of an unnatural disposition of his property by a testator is admissible as a help to be considered with other evidence as tending to show an unbalanced mind or mind easily susceptible to undue influence.

5.  WILLS—RIGHT TO DISPOSE OF PROPERTY.—The right of a person to dispose of his property by will is a property right, which is guaranteed by law.

6.  WILLS—CONCLUSIVENESS OF JURY'S FINDING.—In will contests, the finding of the jury cannot be disturbed if there is any substantial evidence to support it.

7.  WILLS—MENTAL CAPACITY—EVIDENCE.—In will contests, great latitude is allowed in the introduction of testimony on the issue of mental capacity.

8.  WILLS—WANT OF MENTAL CAPACITY—EVIDENCE.—In a will contest evidence *held* to support a finding of want of capacity to make a will.

Appeal from Miller Circuit Court; *James H. McCollum*, Judge; affirmed.

*J. M. Carter* and *B. E. Carter*, for appellant.

*Wade Kitchens, W. H. Arnold, W. H. Arnold, Jr.*, and *David C. Arnold*, for appellee.

HART, C. J. This was a proceeding to contest a will. Georgia A. Mitchell, a colored woman, died in Miller County, Arkansas, in 1925, at the age of fifty-two years. Her will was offered for probate by her executor, and was contested by her sister, Mollie Miller. It was executed on the 27th day of August, 1923, and W. C. Howell was appointed executor. After giving several small legacies to various persons, she left the residue of her estate to W. C. Howell. The probate court found the issues in favor of the executor, and ordered the will admitted to probate. Mollie Miller gave notice of her intention to

appeal from the order of the probate court admitting the will to probate, and duly filed her affidavit for appeal.

The record shows that, upon a trial anew in the circuit court, a verdict was returned in favor of the contestant, Mollie Miller. The judgment of the circuit court, after reciting this fact, continues as follows: "It is therefore ordered and adjudged by the court that the will of Georgia A. Miller, deceased, be and the same is hereby annulled, set aside, canceled, and forever held for naught, and the decree of the probate court of Miller County, Arkansas, is hereby reversed and set aside, and the letters testamentary issued to the said W. C. Howell are set aside and held for naught, and the order and judgment of the county court appealed from is vacated and set aside and held for naught." The executor has duly prosecuted an appeal to this court.

Counsel for appellant invoke the general rule laid down in *Walker* v. *Noll,* 92 Ark. 148, 122 S. W. 488, and other decisions of this court, to the effect that it is necessary, in order to invest the circuit court with jurisdiction, that it appear from the record that the affidavit and prayer for appeal were presented to the probate court and that the appeal was granted. In the case of *Thomas* v. *Thomas,* 150 Ark. 43, 233 S. W. 808, it was held that the granting of the appeal by the probate court is sufficient to confer jurisdiction upon the circuit court and that the entering of the order granting the appeal upon the order of the probate court is merely evidence that the appeal has been granted. In the present case the record of the circuit court recites that the order and judgment of the probate court appealed from is vacated and held for naught. When the whole of that part of the judgment of the circuit court quoted above is considered, it is apparent that the circuit court found that the judgment of the county court sitting as the probate court in the probate of the will of Georgia A. Mitchell, deceased, should be vacated and held for naught. This constituted a finding on the part of the circuit court that an appeal had been taken from the order of the probate court in

the maner provided by law. Otherwise the circuit court would not have had any jurisdiction in the case. If the judgment of the circuit court had not contained an express finding that the judgment of the probate court appealed from should be set aside, counsel for appellant would have been right in contending that the judgment of the circuit ourt should be reversed for want of jurisdiction.

It is well settled in this State that, where a judgment or decree contains a recital of the facts, this court can review the judgment for errors manifest upon the face of the record. *Strode* v. *Holland,* 150 Ark. 122, 233 S. W. 1033. The judgment of the circuit court, having contained a recital that the judgment of the probate court appealed from should be vacated, constitutes *prima facie* evidence that an appeal was taken in the manner provided by law, and must be taken as true, unless, by bill of exceptions or otherwise, the record contains evidence to contradict the recital of the judgment. *First National Bank* v. *Dalsheimer,* 157 Ark. 464, 248 S. W. 575. This is in application of the well-known rule that every presumption must be indulged in favor of the court's finding which competent evidence would warrant.

This brings us to a consideration of the case on the merits. At the outset it may be stated that it is well settled in this State that, if a testator has sufficient mental capacity to understand the conditions and extent of his property, his relations to the persons who are entitled to be considered as objects of his bounty, and the scope and bearing of the provisions of his will, without prompting, then he has sufficient mental capacity to make a will, notwithstanding great bodily weakness from sickness, or extreme distress of mind. *Tobin* v. *Jenkins,* 29 Ark. 151; *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590; *Taylor* v. *McClintock,* 87 Ark. 243, 112 S. W. 405; and *Mason* v. *Bowen,* 122 Ark. 407, 183 S. W. 973, Ann. Cas. 1917D, 713.

It is also inferable from these cases, and expressly decided in *Tobin* v. *Jenkins,* 29 Ark. 151, that evidence of an unnatural disposition of his property by a testator is

admissible as a help to be considered with the other evidence as tending to show an unbalanced mind or a mind easily susceptible to undue influence. In other words, it is a help which the jury may consider in connection with the other evidence in passing upon the soundness of mind of the testator. This is in accordance with the general rule upon the question. Case-note to 13 Ann. Cas., at page 1044.

This brings us to a consideration of the evidence in the case as applied to these well-settled principles of law. It will be impossible, within reasonable limits, to set forth and discuss in detail the evidence introduced at the trial. We shall therefore state our conclusions upon the evidence and confine our discussion to the more salient features of the evidence which we think sustain our holding. We recognize that the right of a person to dispose of his property by will is a property right which is guaranteed by law, yet, as pointed out in the cases above cited, in a will contest the finding of the jury cannot be disturbed on appeal if there is any substantial evidence to support it.

Substantial evidence tending to show lack of testamentary capacity is sufficient to carry the case to the jury, however strongly it may be controverted. In this view of the matter, it will not be necessary to abstract the evidence for the proponent of the will. It will suffice to state that the evidence for the appellant shows that the testator, although weak in body, had a mind which was unimpaired and was stronger than most women in her condition in life. We must test the verdict, however, upon the evidence for the contestant viewed in the light most favorable to her. It is extremely difficult to adopt an absolute or fixed rule as to what will constitute mental capacity to make a will in all cases. Each case must depend in a large degree upon its own peculiar facts. Circumstances, nervous force and physical organization of different persons affect their mental powers in varying degrees. Hence great latitude is allowed in the introduction of testimony.

The testator, at the time of her death, was fifty-two years of age. Her family history in regard to insanity is bad. Her mother and younger sister committed suicide; one cousin had died in an insane asylum, and another had left home, and was found drowned. The testator had been in ill health since her girlhood. She had had several operations, and had passed several stones from her kidneys. She had had a tumor in her womb, tuberculosis of the lungs, and leakage of the heart. She had had "spells" all her life, and during them she would be out of her head; and the older she got the more forgetful she became, and, in the opinion of witnesses who had known her all her life, or for many years, she was mentally unbalanced and incapable mentally of making a will. Mollie Miller had inherited a part of her mother's estate and had deeded it to her sister when her husband was in. trouble, for the purpose of helping them. She never got anything for doing this. Great affection existed between the sisters at the time the testatrix's husband died. Some time after the death of her husband Georgia Mitchell became infatuated with W. C. Howell, a negro preacher, and became associated with him in business. The will in question was executed on the 27th day of August, 1923. Mollie Miller visited the testatrix in a sanitarium during that month. The testatrix told her sister there was a little bird coming to her window, and that it came from the cemetery and was coming after her. She begged Mollie Miller to take care of her when she was dismissed from the sanitarium. After her husband's death the testatrix had been in the habit of passing much time at his grave. At one time, when she was ill, she asked them to shoo the chickens from the foot of her bed. She had various hallucinations of that sort. According to the testimony of Mollie Miller and other persons who were associated with the testatrix closely, she had no reason to disinherit Mollie Miller, and never intended to do so. Her mind had become so clouded, from bodily illness during her whole life and from distress at her husband's death, in her weakened condition, that she was not capa-

ble mentally of making a will. It was the opinion of several persons who had known her all her life that, when she had the spells which she had been accustomed to having since her girlhood, she was mentally unbalanced. They told various things which she said and did while in this condition which tended to show that she did not know what she was doing. The jury might have inferred from the testimony of Mollie Miller that the will was executed during one of these spells and that she did not appreciate what she was doing, and that her mental condition was such that she was not capable of making a will in the application of the principles of law to the facts as presented in the record. When the evidence is viewed in its entirety and in the light most favorable to appellee, it cannot be said that it is not legally sufficient to support the verdict.

The evidence introduced and the instructions given by the court to the jury were in conformity to the rules of law announced above. The case was fairly submitted to the jury upon competent evidence, and, under our settled rules of practice, we are not at liberty to disturb the verdict of the jury, even though we might think it contrary to the weight of the evidence.

It follows that the judgment will be affirmed.